IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| JOHN SINGLETARY and, <br> CARLA SINGLETARY, <br> <br> Plaintiff, <br> <br> v. <br> <br> CITY OF NORTH CHARLESTON and <br> ZONING BOARD OF NORTH <br> CHARLESTON ZONING BOARD OF <br> APPEALS OF NORTH CHARLESTON, <br> WILLIAM GORE, in his official and <br> individual capacity, and other John Doe <br> City of North Charleston officials, <br> yet to be identified, in their individual <br> and official capacities. <br> <br> Defendants. | C/A 2:09-1612-RMG-BM <br> <br> <br> <br> <br> <br> **REPORT AND RECOMMENDATION** |

This action was filed by the Plaintiffs, pro se, on June 18, 2009, asserting claims relating to zoning matters in the city of North Charleston, South Carolina. Plaintiffs subsequently retained counsel; see Court Docket Nos. 21, 42; and an Amended Complaint was filed on November 23, 2009. See Court Docket No. 37. The Defendants thereafter filed a motion to dismiss the Amended Complaint, and following a hearing on February 1, 2010, the Honorable Margaret B. Seymour, United States District Judge, entered an Order granting in part, and denying in part, the



1

motion to dismiss.  See Court Docket No. 54.  Specifically, Judge Seymour granted Defendants' motion to dismiss the Amended Complaint as to Plaintiffs' procedural due process claim, but denied Defendants' motion with respect to Plaintiffs' remaining claims.

On November 15, 2010, Plaintiff John Singletary filed a notice to again proceed pro se, and Plaintiffs' counsel were terminated from representation in the case.  See Court Docket Nos. 70, 71.[1]  On December 6, 2011 the Defendants filed a motion for summary judgment.  As the Plaintiff(s) are now proceeding pro se, a Roseboro order was entered by the Court advising Plaintiff(s) of the importance of a dispositive motion and of the need for them to file an adequate response.  Plaintiff(s) were specifically advised that if they failed to respond adequately, the Defendants' motion may be granted, thereby ending their case.  Plaintiff John Singletary thereafter filed a five hundred ninety-two (592) page response in opposition to Defendants' motion, which included a cross-motion for summary judgment.

These motions are now before the Court for disposition.[2]

**Background and Evidence**

Plaintiffs allege in their Complaint that they reside in the City of North Charleston,

---

[1]As a result of this filing and the dismissal of counsel, the status of co-Plaintiff Carla Singletary is unclear, as Plaintiff John Singletary's notice only referred to himself.  Further, since the filing of that notice, only Plaintiff John Singletary has signed filings and pleadings in this case.  Asad v. Arab Bank, PLC, 117 Fed. Appx. 466, 467 (7th Cir. Nov. 12, 2004)[Plaintiff who is not a lawyer may not represent the interests of any other litigant].

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), D.S.C.  The Defendants have filed a motion for summary judgment, and Plaintiff John Singletary has filed a cross-motion for summary judgment.  As these are dispositive motions, this Report and Recommendation is entered for review by the Court.



South Carolina and own property locate at 4321 Waterview Circle ("the property"). Plaintiffs allege that they applied for Site Plan Approval for construction of a single family home on the property on February 9, 2007, and that they received Site Plan Approval on February 15, 2007. Plaintiffs further allege that a building permit was thereafter issued on June 6, 2007, following which they commenced construction of the dwelling. Plaintiffs allege, however, that after a visit by city employees on April 7, 2008 (which Plaintiffs describe as a "trespass and raid"), officials with the North Charleston Building Department insisted that Plaintiff apply for a variance or he would be fined and a "stop work" court order placed on construction. Plaintiff John Singletary further alleges that on or about April 15, 2008, city employees began a "campaign of harassment" against him for minor code violations pertaining to rental houses that he owned.

Plaintiffs allege that, although the Building and Zoning Department initially claimed that the residence was in violation of height restrictions and/or did not comply with side and rear setback requirements, the City ultimately took the position that the house as built violated the restrictive covenants for Evanston Estates in regards to the front setback requirement. Plaintiffs allege that as a result of these disputes, they have been denied a certificate of occupancy to the residence, and allege that the Defendants are attempting to enforce a restrictive covenant in a selective and inequitable manner, as other homes that are set closer to the street have not been deemed in violation of any applicable front setback requirements. Plaintiffs allege that they petitioned the Zoning Board of Appeals for a certificate of occupancy in April 2008, and that a hearing was held on April 7, 2008 at which they were not allowed to participate, and the petition for a certificate of occupancy was denied.



The remaining issues to be decided in this case are as follows: 1) a claim for violation of Plaintiffs' substantive due process rights (First Cause of Action), based on the denial of a certificate of occupancy and an irrational or arbitrary government action, resulting in a substantial injury to the Plaintiffs, and 2) violation of the Plaintiffs' right to equal protection (Third Cause of Action) on the grounds that the Defendants' failure to provide permits was not done in a "general uniform manner to others in similar circumstances" and was done in a "selective and discriminatory manner". Plaintiffs seek both injunctive relief and monetary damages. See generally, Amended Complaint.[3]

In support of summary judgment in the case, the Defendant William Gore has submitted an affidavit wherein he attests that he is the Zoning Administrator and Planning Director for the City of North Charleston. Gore attests that throughout the entire permitting process, Plaintiff John Singletary has been repeatedly advised that the City will issue his certificate of occupancy if he brings the steps at the dwelling built on the property into compliance. Gore then attests to the relevant sections of the North Charleston Zoning Code pertinent to setback provisions, and has attached to his affidavit true and accurate copies of various documents from the Zoning Department and Board of Zoning Appeals relating to Plaintiff's case. Gore attests that in this particular case, a neighbor from the Evanston Estates complained to the building official about the construction of the home at issue, following which the building official requested that Zoning Inspector Mary Cohen

---

[3] While Plaintiffs' Amended Complaint contains other causes of action, Plaintiffs' Second Cause of Action for a procedural due process violation was dismissed by Judge Seymour in her Order of February 23, 2010, and Plaintiffs withdrew their Sixth Cause of Action for "inverse condemnation" at the motions hearing held on February 2, 2010. Plaintiffs remaining causes of action (Counts IV and V) seek injunctive relief under 42 U.S.C. § 1987 and 28 U. S.C. § 1651.



do an initial inspection of the property. Gore attests that it was determined that the site plan submitted to the City by Mr. Singletary as part of his building permit application did not match the actual construction on the property, following which Mr. Singletary was advised of the problem and of the ordinance violation.

Gore attests that rather than bring the steps at the dwelling into compliance, Mr. Singletary opted to pursue a variance through the Board of Zoning Appeals, as is his right. Gore attests that at a variance hearing before the Board of Zoning Appeals held on April 7, 2008, approximately fifteen (15) people from the neighborhood were present to speak out against the variance application. Gore attests that although this meeting began at 5:00, Mr. Singletary did not show up until 6:00, after the variance request had been heard and most of the audience had left. However, because Plaintiff complained that he had been advised that the meeting did not start until 6:00, the Appeals Board agreed to rehear the variance request the following month. Gore attests that at the subsequent meeting held on May 5, 2008, Mr. Singletary had an individual present to speak in favor of the application, while other neighbors appeared to oppose the request.[4]

Gore attests that the Board of Zoning Appeals denied Plaintiffs' request for a variance, following which Plaintiff appealed this decision to the South Carolina Court of Common Pleas. Gore attests that the State Circuit Court affirmed the decision of the Board of Zoning Appeals, and that Mr. Singletary did not thereafter appeal this decision. See also Defendants' Exhibit A [copy of Circuit Court Order]. Gore attests that Mr. Singletary was treated no differently

---

[4]The minutes of the meeting actually reflect that two (2) individuals spoke in favor. The chairman was also asked to count how many people were in favor and how many against, with the results being 14 against the variance and 16 (including the applicant) in favor. See Defendants' Exhibit B [Court Docket No. 161-3, p. 29]. See also, Plaintiffs' Exhibit Q [Petition].

5



than any other individual who is found in violation of the zoning ordinance and subsequently requests a variance.

With respect to Plaintiffs' equal protection claim, which Gore attests he understands to be based on a claim that Mr. Singletary has somehow been singled out and treated differently from other citizens because of his race (African-American), Gore attests that all of the zoning officials who initially addressed Mr. Singletary's encroachment problem and ordinance violation are themselves African-American, including himself (Gore) as well as Zoning Inspector Mary Cohen and Building Director Darbis Briggman. See generally, Defendants Exhibit B [Gore Affidavit, with attached exhibits].

In opposition to the Defendants' motion, Plaintiff John Singletary has submitted an affidavit wherein he attests that at no time during the entire process up until April 7, 2008 did the City of North Charleston or any of it employees, agents, or departments give any notice regarding his setback encroachments or any variances. Plaintiff John Singletary further attests that a "certified surveyor with many years of experience in North Charleston has certified that steps are in compliance." Plaintiff also denies that Cohen visited his home on April 6, 2008 regarding any zoning setback issue, and complains about discovery responses received or not received from the Defendants. With respect to his equal protection claim, Plaintiff "attests" that "[c]ommon sense in most cases make it clear that African-Americans can display unequal treatment toward other African Americans . . . ." Plaintiff also attests that during his receipt of the notice of violation on April 7, 2008, "city Police [ ] Officer T. Wallace and his partner did in fact hold [Plaintiff] at gunpoint while inside of his own home . . . ."

Plaintiff further attests that the zoning classification for the setback at the residence



is the incorrect classification, and that the "Community" voted three times at the May 5, 2008 Zoning Board of Appeals meeting in favor of the Plaintiff. Plaintiff also attests that the Board of Zoning Appeals "did not have a required concurring majority vote and did not follow Robert's Rule of Order . . . [and] the initial motion to deny the variance on May 5, 2008 did not receive a second from the ZBA members present". John Singletary also attests that the City has approved "scores" of front yard variances even closer than his, and generally complains that the conduct of city officials was improper as was the conduct of the state circuit judge who had a hearing in his case on December 18, 2008. See generally, Plaintiffs' Affidavit.

As previously noted, Plaintiff has also attached voluminous materials and documents to his memorandum in opposition to the Defendants' motion.

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing pleadings filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the Court cannot assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social

7



Services, 901 F.2d 387 (4th Cir. 1990).

## I.

### (Substantive Due Process Claim)

Plaintiffs' substantive due process claim is considered under 42 U.S.C. § 1983.[5] A claim of substantive due process is derived from the Fourteenth Amendment, which provides, in part, that "no State [shall] deprived any person of life, liberty, or property without the due process of law . . . ." U.S. Const. Amend. XIV, Section 1. "Substantive due process is an outer limit on the legitimacy of governmental action." Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999); see also County of Sacramento v. Lewis, 523 U.S. 833, 845-846 (1998) [The "touchstone of due process is protection of the individual against arbitrary action of government . . . whether the fault lies in a denial of fundamental procedural fairness, . . . or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective."] (internal quotations and citations omitted).

With respect to a substantive due process claim in a land use dispute, a Plaintiff "must allege facts demonstrating that the [city's] conduct was arbitrary, irrational, or motivated by constitutionally impermissible factors. In addition, a Plaintiff asserting that a municipal land decision violated substantive due process must show that the defendants' conduct 'shocks the conscience'". Para v. City of Scranton, No. 06-2432, 2008 WL 2705538, at * 10 (M.D.Pa. July 10,

---

[5] Section 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by persons acting under color of state law. Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973). The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their *federally guaranteed* rights and to provide relief to victims if such deterrence fails. McKnight v. Rees, 88 F.3d 417(6th Cir. 1996)(emphasis added).



2008)(internal citations omitted). While whether the conduct at issue meets this heightened "shocks the conscience" standard will depend on the facts of the particular case, the applicable caselaw makes clear that only the "most egregious official conduct" will rise to the level of a constitutional violation. Id., quoting United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392, 399-400 (3rd Cir. 2003). Here, after careful review and consideration of the arguments and evidence submitted, the undersigned does not find that Plaintiffs have presented evidence sufficient to give rise to a genuine issue of material fact as to whether their substantive due process rights were violated by any named Defendant.

First, with respect to whether the stairs to Plaintiff's dwelling violated the setback requirements at issue, that fact was established in the previously referenced state court litigation, a finding which is binding on this Court in this case. See Defendants' Exhibit A, (Circuit Court Order), pp. 1-4; cf. Sunrise Corporation of Myrtle Beach, et al. v. City of Myrtle Beach, 420 F.3d 322, 327 (4th Cir. 2002); Crooked Lake Development, Inc. v. Emmet County, 763 F.Supp. 1398, 1404 (W.D.Mich. 1991)["This court is bound by the state court's factual findings . . . ."]. The state circuit court has already found that the neighborhood's restrictive covenants mandate a house be setback twenty-five feet from the front property line, that the Zoning Board in making its decision must follow this restrictive covenant, and that Plaintiff's construction encroached onto this setback line. Id. Citing to S.C. Code Ann. § 6-29-1145 [Zoning Board required to follow restrictive covenant]; City Zoning Regulation § 4-7(1)[Noting that stairs are included as part of a "building" for measurement purposes]; North Charleston Road Code § 17-80(a)(1)[Noting distinction between the width of the pavement and the width of the right away]; see also Gore Affidavit, ¶ 6; see Nunnery v. Brantly Construction Co., Inc., 345 S.E.2d 740, 743 (S.C. 1986)[res judicata applies when the



same parties or their privies are involved in both actions, the subject matter is the same, and the question in issue was actually ruled upon.]; see also Pye v. Aycock, 480 S.E.2d 455, 458 (S.C. Ct. App. 1997). Further, the doctrine of collateral estoppel prevents a party from re-litigating in a subsequent suit an issue litigated and determined in a prior action. Stone v. Roadway Express, 627 S.E.2d 695, 698 (S.C. 2006)["Collateral estoppel prevents a party from re-litigating in a subsequent suit an issue actually and necessarily litigated and determined in a prior action"] (quoting Jinks v. Richland County, 585 S.E.2d 281 (S.C. 2003)); see also Noonan v. Stock Building Supply, Inc., No. 08-2433, 2009 WL 302314, at * 2 (D.S.C. 2009). As for Plaintiffs' arguments that the Defendants violated various procedural rules or requirements in reaching their decision, that claim has already been dismissed by Judge Seymour. See Court Docket No. 54.

Therefore, the only issue to be determined in this lawsuit is whether the Defendants violated Plaintiffs' substantive due process rights by arbitrarily or capriciously denying Plaintiffs their requested variance. No evidence of any such conduct or actions is present in the evidence and exhibits before the Court. O'Connor v. Pierson, 426 F.3d 187, 204 (2d Cir. 2005)["[C]onstitutionally arbitrary action for purposes of a property-based substantive due process claim is action that shocks the conscience"]. The evidence before the Court shows that Plaintiffs' house was constructed in violation of code requirements, that Plaintiffs were given an opportunity to appear before the Zoning Board of Appeals to request a variance (and were even provided with a second opportunity to do so after Plaintiff John Singletary asserted he was provided with the wrong time for the first hearing); see Defendants' Exhibit B [Court Docket No. 161-3, pp. 21-52]; and that after due deliberation Plaintiffs' request for a variance was denied. In denying the requested variance, the Zoning Board of Appeals determined that requiring Plaintiffs' to comply with the



2:09-cv-01612-RMG     Date Filed 01/18/12    Entry Number 166     Page 11 of 16

setback requirements would not impose an unnecessary hardship because the mistake could be remedied by simply changing the steps to conform to the setbacks, that changing the front steps would not prohibit or unreasonably restrict the utilization of the property, that the front yard setbacks applied to the other property in the vicinity, and that authorization of the variance would be a detriment to the public good. See Defendants' Exhibit B [Court Docket No. 161-3, pp. 35-36].

While Plaintiffs are obviously dissatisfied with this decision, and note that they had the support of many of their neighbors for the variance, that does not make the decision unconstitutional as arbitrary or capricious. Plaintiffs simply disagree with the decision that was made. Cf. Gallagher v. Magner, 619 F.3d 823, 840 (8th Cir. 2010)[Rejecting substantive due process claim in case alleging over aggressive and sometimes baseless enforcement of the housing code because "[i]n light of the uncontested legitimate goals of enforcing the Housing Code, there is insufficient evidence to reasonably conclude that this is a 'truly egregious and extraordinary' example of government regulation"], see also Myers v. Scott County, 868 F.2d 1017, 1018 (8th Cir. 1999). Hence, while it does not appear to be disputed in the record before this Court that the steps' encroachment onto the setback requirement was not done purposely, but was due to a mistake in measurement, that does not make the variance decision arbitrary or capricious, nor do any of the statements of fact in Plaintiffs' affidavit or any of the voluminous exhibits attached to Plaintiffs' brief give rise to a genuine issue of fact as to whether this decision was arbitrary or capricious. Myers, 868 F.2d at 1018 ["[T]he theory of substantive due process is properly reserved for truly egregious and extraordinary cases"]; Tri-County Paving, Inc. v. Ashe County, 281 F.3d 430, 440-441 (4th Cir. 2002)[Noting that only "arbitrary and irrational" actions violate substantive due process, and that when the local government's actions were "rationally related to a legitimate governmental

11



purpose" the Court would not "constitutionalize what remains at heart a local [land] dispute"]. Therefore, this claim should be dismissed.

## II.

### (Equal Protection Claim)

A party may bring an equal protection claim alleging that they have been intentionally treated differently from others similarly situated and that there was no rational basis to support the different treatment. Tri-County Paving, 281 F.3d at 439 (citing Olech, 528 U.S. at 564). Plaintiffs allege in their Third Cause of Action that the Defendants' failure to provide them with the necessary permits was not done in a "general uniform manner to others in similar circumstances . . . but [was done in a] selective and discriminatory manner" with favorable treatment being granted to "a select few . . . ." Plaintiffs further allege that they were "treated differently than other similarly situated individuals and the zoning ordinances of North Charleston were selectively enforced in this instance", thereby violating their right to equal protection. Complaint, at ¶ ¶ 96-98.

Under the Equal Protection Clause of the Fourteenth Amendment, the State may not "deny to any person within its jurisdiction the equal protection of the laws". U. S. Const. Amend. XIV, § 1. "The Equal Protection Clause limits all state action, prohibiting any state from denying a person equal protection through the enactment, administration, or enforcement of its laws and regulations." Sylvia Development Corporation v. Calvert County, Maryland, 48 F.3d 810, 818 (4th Cir. 1995). This Clause is equally applicable to local government actions, such as those of the zoning officials of the City of North Charleston. See Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 378 (2001)["[T]he substantive obligation that the Equal Protection Clause creates applies to state and local government entities alike."]. Further, equal protection claims may



be brought by a "class of one", where a plaintiff alleges that they have been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. Village of Willowbrook, et al. v. Olech, 528 U.S. 562, 564 (2000).

However, although Plaintiffs may bring a claim for equal protection based on their being denied a zoning permit, the fact remains that they have failed to present any evidence sufficient to give rise to a genuine issue of fact as to whether their equal protection rights were violated in this case. While Plaintiff Singletary in his affidavit makes the general and conclusory statements that the "city has approved scores of front yard variances even closer than the Plaintiff's", and that "scores of homes as [sic] Defendant's affirm in their responsive pleading are in North Charleston with the step[s] closer than the Plaintiff's", Plaintiff has provided no actual *evidence* to show that any dwelling similar to his in his neighborhood has steps within the setback line and received a variance, while he did not.[6] House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Tri-County Paving, 281 F.3d at 440 [Declining to overturn county permitting decision where plaintiff "failed to present evidence that the County intentionally treated [Plaintiff] differently from any similarly situated entity"].

Plaintiff has also presented no evidence to show that the zoning and setback requirements at issue are in and of themselves unconstitutional. Tri-County Paving, 281 F.3d at 438

---

[6] For example, while Plaintiff has submitted numerous photographs of homes with handwritten notes on them, these photographs are not evidence as to what any measurements are with regard to set-back lines, the exact locations of these homes (i.e., whether they are even in his subdivision), exact dates when they were built and the applicable codes at those times, or whether variances were granted, and if so, under what circumstances. See Plaintiffs' Exhibit MMM. Similarly, in a state court appellate transcript submitted by Plaintiff, Plaintiff refers to a list of 50 homes in different subdivisions. See Appellate Transcript, p. 6. However, there is again no evidence before the Court with regard to any specifics concerning this list of homes.



["The Supreme Court has made clear that when no fundamental right or suspect classification is at issue, the Equal Protection Clause allows a legislative body wide latitude in drawing classifications [which] will be sustained if the classification drawn is rationally related to a legitimate state interest."] (internal citations omitted). There is no evidence that the zoning and setback requirements at issue are not related to a legitimate state purpose. Id., at 439 [Upholding County's decision to deny a permit where local officials "reasonably could have believed that [their] action was rationally related to a legitimate governmental interest", and declining to "substitute it's policy judgments as to the exercise of the police power for those of a democratically elected government"] (internal citations omitted).

Finally, even if the Plaintiffs here had presented evidence to show that they were similarly situated to other houses in the neighborhood which received a variance, they have still failed to show purposeful discrimination. "If disparate treatment alone was sufficient to support a Constitutional remedy then every mistake of a local zoning board in which the board mistakenly treated an individual differently from another similarly situated applicant would rise to the level of a federal Constitutional claim." Sunrise Corporation of Myrtle Beach, 420 F.3d at 329. Although Plaintiffs allege in a general and conclusory manner in their complaint that there was some race based motivation behind the permitting decision in this case, the evidence before the Court is that both John Singletary and the various zoning/permitting officials involved were all African-Americans. Further, while John Singletary "attests" in his affidavit that "[c]ommon sense in legal cases make it clear that African-Americans can display unequal treatment towards other African-Americans", the fact remains that Plaintiffs have presented no evidence whatsoever to show that any white residents of their neighborhood have been granted the type of variance Plaintiffs were denied,



or to establish any other race based rationale for the permitting decision at issue. See <u>Sunrise Corporation of Myrtle Beach</u>, 420 F.3d at 329 [Rejecting plaintiff's claim where there was "no evidence in the record that [Plaintiff] was subjected to purposeful, invidious discrimination."]. Therefore, the Defendants are entitled to dismissal of Plaintiffs' equal protection claim.

### Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted,** that Plaintiff(s)' cross motion for summary judgment be **denied**, and that this case be dismissed.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

January 18, 2012
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

