# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| John Singletary and Carla Singletary, | Civil Action No. 2:09-cv-1612-RMG |
| Plaintiffs, | |
| v. | |
| City of North Charleston, City Building Department and Darbis Brigman, City Zoning Department and William Gore, City Zoning Board of Appeals and Donald Schaeffer, City Legal Department, City Mayor Keith Sumney, City Building Inspector Rick Williams, City Zoning Inspector Mary Cohen, and Zoning Board of Appeals Secretary Adrienne Williams, | ORDER |
| Defendants. | |

This matter comes before the Court on the parties' cross motions for summary judgment (Dkt. Nos. 161 and 165) and Plaintiffs' motion to recuse and for an emergency stay (Dkt. No. 173).

## Background

This is a land use dispute in which Plaintiffs, a husband and a wife,[1] allege that Defendants, the City of North Charleston and several of its employees, have treated them unfairly and infringed their constitutional rights. In December of 2003, Plaintiffs purchased a piece of property located at 4321 Waterview Circle, North Charleston, SC, which is in the

---

[1] While both John Singletary and Carla Singletary are identified as Plaintiffs in the Amended Complaint, Plaintiff John Singletary notified the Court on November 15, 2011, that he would be proceeding *pro se*. (Dkt. No. 70). Subsequently, all filings have been signed by Plaintiff John Singletary only.

1

neighborhood of Evanston Estates. Plaintiffs subsequently began constructing a single family house on the property. The parties agree that Plaintiffs applied for and received site plan approval for construction of the house in February of 2007. The parties also agree that Plaintiffs' application for site plan approval included a drawing which showed the house as being in compliance with all front yard setback restrictions. However, the parties disagree as to whether the house was actually constructed in conformance with the drawing on Plaintiffs' application. Plaintiffs contend that the house was constructed in conformance with the drawing and in compliance with the applicable front yard setback requirements. Defendants, on the other hand, contend that Plaintiffs did not construct the house in conformance with the drawing and that the steps leading up to the front of the house, as constructed, violate the front yard setback requirement in the restrictive covenants for Evanston Estates.

According to Plaintiffs, they were notified by Defendants in March of 2008 that they needed a variance before Defendants would issue a Certificate of Occupancy for the house. Although Plaintiffs believed that their house was in conformance with the setback requirement and that a variance was unnecessary, Plaintiffs applied for the variance anyway. On April 7, 2008, the Zoning Board of Appeals held a meeting and considered Plaintiffs' request for a variance. The minutes from the meeting show that Mr. Singletary did not arrive at the meeting until after the Zoning Board of Appeals had already considered and voted to deny Plaintiffs' request for a variance. (Dkt. No. 161-3 at 10-19).[2] Because Plaintiffs were not present when the Zoning Board of Appeals considered Plaintiffs' request for a variance, Plaintiffs were informed that the Board would consider Plaintiffs' request again at the next meeting, which was scheduled to be held on May 5, 2008. (*Id.* at 15). The minutes from the May 5, 2008 meeting detail the

---

[2] Mr. Singletary contends that he was incorrectly told that the meeting would start at 6:00 p.m. when, in fact, it started at 5:00 p.m.

2

discussion which was held regarding Plaintiffs' request for a variance. (*Id.* at 24-29). At the meeting, Defendant William Gore, the Zoning Administrator for the City of North Charleston, explained why he opposed granting the variance. (*Id.*). Mr. Singletary responded to several of Mr. Gore's points and explained why he believed the variance should be granted. (*Id.*). Then, others at the meeting spoke both in favor of and against granting the variance. (*Id.*). One of the individuals present at the meeting asked the chairman to count how many people at the meeting were in favor of the variance and how many people were against it, and the chairman counted 16 in favor of granting the variance and 14 against granting the variance. (*Id.*). After the discussion, a motion was made to deny the request for a variance, but no one seconded the motion, so it failed. (*Id.*). Then, a motion was made to grant the variance, and that motion was seconded. (*Id.*). The motion to grant the variance failed 1-2-0. (*Id.*). Because Plaintiffs have not successfully obtained a variance and have not reconstructed the steps leading up to the front of their house,[3] Defendants have continued to refuse to grant Plaintiffs a Certificate of Occupancy for their house.

On July 9, 2008, Plaintiffs appealed the decision of the Zoning Board of Appeals to the Charleston County Court of Common Pleas pursuant to Section 6-29-820 of the South Carolina Code. *See* S.C. Code Ann. § 6-29-820(A) ("A person who may have a substantial interest in any decision of the board of appeals or an officer or agent of the appropriate governing authority may appeal from a decision of the board to the circuit court in and for the county, by filing with the clerk of the court a petition in writing setting forth plainly, fully, and distinctly why the decision is contrary to law."). Section 6-29-840 provides certain rules regarding the scope of an appeal brought pursuant to Section 6-29-820. Section 6-29-840(A) provides, in relevant part:

---

[3] The parties also dispute how burdensome it would be for Plaintiffs to reconstruct the steps so that they meet with Defendants' approval. (*See* Dkt. No. 161-3 at 26).

3

> At the next term of the circuit court or in chambers, upon ten days' notice to the parties, the presiding judge of the circuit court of the county must proceed to hear and pass upon the appeal on the certified record of the board proceedings. The findings of fact by the board of appeals must be treated in the same manner as a finding of fact by a jury, and the court may not take additional evidence. In the event the judge determines that the certified record is insufficient for review, the matter may be remanded to the zoning board of appeals for rehearing. In determining the questions presented by the appeal, the court must determine only whether the decision of the board is correct as a matter of law.

S.C. Code Ann. § 6-29-840(A). In interpreting this statute, the South Carolina Supreme Court has held that "a decision of a municipal zoning board will be overturned [only] if it is arbitrary, capricious, has no reasonable relation to a lawful purpose, or if the board has abused its discretion." *Restaurant Row Assocs. v. Horry County*, 516 S.E.2d 442, 446 (S.C. 1999). Also, Section 6-29-840(B) provides: "Nothing in this subsection prohibits a property owner from subsequently electing to assert a pre-existing right to trial by jury of any issue beyond the subject matter jurisdiction of the board of appeals, such as, but not limited to, a determination of the amount of damages due for an unconstitutional taking." S.C. Code Ann. § 6-29-840(B). On January 6, 2009, Judge Roger Young of the Charleston County Court of Common Pleas issued a written opinion affirming the decision of the Zoning Board. (Dkt. No. 161-2). In his opinion, Judge Young found that Plaintiffs "did not construct the stairs in accordance with the measurements indicated in either the site plan or the City's ordinances." (*Id.* at 2). Plaintiffs filed a motion to reconsider and a motion to recuse Judge Young, but the Court denied both motions. Plaintiffs did not appeal the decision, nor did Plaintiffs seek a trial by jury of any issue beyond the subject matter jurisdiction of the board of appeals, pursuant to Section 6-29-840(B).

On June 18, 2009, Plaintiffs, proceeding *pro se*, filed a Complaint in this action and indicated that they were "removing" the case decided by Judge Young to federal court. (*See* Dkt. Nos. 1 and 1-2). In their original Complaint, Plaintiffs alleged that "[a]ll inspections have been

completed and approved and th[e] Singletary's remain in full compliance with all by the city [sic] and are entitled to a Certificate of Occupancy." (Dkt. No. 1 at 4). Plaintiffs further alleged that Defendants' actions violated their constitutional rights. (*Id.*). On August 17, 2009, Defendants filed a motion to dismiss Plaintiffs' Complaint, arguing that the Court should abstain from hearing the case pursuant to the *Rooker-Feldman*, *Younger*, and *Burford* abstention doctrines and pursuant to the preclusion doctrines of collateral estoppel and res judicata. (Dkt. No. 14-1). On September 16, 2009, an attorney, Veronica Small, filed a notice of appearance on behalf of Plaintiffs. (Dkt. No. 21). Plaintiffs were granted leave to file an amended complaint, and on November 23, 2009, Plaintiffs filed the Amended Complaint, which is the operative complaint in this case. (Dkt. No. 37).

In the Amended Complaint, Plaintiffs allege that Defendants are attempting to enforce the restrictive covenants "in a selective and inequitable manner as there are numerous homes and structures in the subdivision which are set closer to the street which were not deemed in violation of any applicable front set back requirements and the restrictive covenant." (Dkt. No. 37 at 6). Plaintiffs also allege that Defendants have engaged in "a coordinated and concerted harassment of the Singletarys meant to deny them occupancy of their new home." (*Id.* at 4). Plaintiffs allege six causes of action: substantive due process (Count I), procedural due process (Count II), equal protection clause (Count III), injunctive relief pursuant to 42 U.S.C. § 1987 (Count IV), mandamus relief pursuant to 28 U.S.C. § 1651 (Count V), and inverse condemnation (Count VI). (*Id.*).[4] On December 11, 2009, Defendants filed a motion to dismiss the Amended Complaint, again arguing that the Court should abstain from hearing the case and, in the alternative, arguing

---

[4] Plaintiffs' constitutional claims are brought pursuant to 42 U.S.C. § 1983, which "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

5

that Plaintiffs are barred from pursuing their claims pursuant to preclusion doctrines. (Dkt. No. 38). On February 23, 2010, the Court issued an Order granting Defendants' motion to dismiss as to Plaintiffs' procedural due process claim on the basis that the claim constituted a challenge to a state court judgment which the Court must abstain from hearing pursuant to the *Rooker-Feldman* doctrine. (Dkt. No. 54).[5] The Court denied Defendants' motion to dismiss as to Plaintiffs' remaining claims. (*Id.*).

Discovery ended on October 3, 2011,[6] and Defendants filed a motion for summary judgment on December 6, 2011. (Dkt. No. 161). On January 9, 2012, Plaintiffs filed a response in opposition to Defendants' motion for summary judgment and, in the same filing, moved for summary judgment against Defendants. (Dkt. No. 165). On January 18, 2012, Magistrate Judge Bristow Marchant issued a Report and Recommendation recommending that the Court grant Defendants' motion for summary judgment and deny Plaintiffs' motion for summary judgment. (Dkt. No. 166). On January 20, 2012, Plaintiffs filed a supplemental response to Defendants' motion for summary judgment (Dkt. No. 169), and on January 30, 2012, Plaintiffs filed objections to the Report and Recommendation. (Dkt. No. 171). Finally, on February 6, 2012, Plaintiffs filed a motion to recuse Magistrate Judge Marchant from this case and a motion for emergency stay based on the filing of the motion to recuse. (Dkt. No. 173).

---

[5] Plaintiffs withdrew the inverse condemnation claim at a hearing on February 1, 2010. Thus, the remaining causes of action are substantive due process, equal protection clause, injunctive relief pursuant to 42 U.S.C. § 1987, and relief pursuant to 28 U.S.C. § 1651.

[6] In Plaintiffs' response in opposition to Defendants' motion for summary judgment and in Plaintiffs' objections to the Magistrate's Report and Recommendation, Plaintiffs attempt to relitigate numerous discovery issues which were previously addressed by the Magistrate Judges who handled the pretrial proceedings in this case. The Court agrees with the Magistrates' rulings on these discovery disputes and declines to discuss these issues in this Order.

## Analysis

### I. Motion to Recuse and Motion for Emergency Stay

In Plaintiffs' motion to recuse, Plaintiffs argue that Judge Marchant should "remove and recuse himself from any further judicial oversight, presiding consideration, management, and or deciding any matter or issues, whatsoever in the matter." (Dkt. No. 173 at 5). As an initial matter, Plaintiffs' motion to recuse was moot as soon as it was filed, as the case is no longer before Judge Marchant and, thus, Plaintiffs have already received the relief that they requested in their motion. Further, the Court has conducted a *de novo* review of this entire matter. While the Court has reviewed Judge Marchant's Report and Recommendation, the Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). Because the case is no longer before Judge Marchant and this Court has conducted a *de novo* review of the matter, the Court denies Plaintiffs' motion to recuse.

Further, the Court denies Plaintiffs' motion to recuse for the additional reason that the motion is meritless. In support of the motion, Plaintiffs argue that a reasonable person would question Judge Marchant's partiality because he "now or formerly held memberships while, presiding as a Federal Magistrate Judge, in more than one club or society that practices invidious discrimination. The Forest Lake Country Club and the Assembly Ball to name two." (*Id.*). Plaintiffs then complain about various decisions made by Judge Marchant relating to discovery disputes and attribute the decisions which were unfavorable to Plaintiffs to Judge Marchant's alleged racism. However, Judge Marchant is not a member of Forest Lake Club or the Assembly

7

Ball, nor was Judge Marchant a member of either of these groups at any point during the pendency of this litigation. Plaintiffs have provided no reasonable basis for their belief that Judge Marchant is a racist or is biased against them in any way. Disagreement with a Judge's discovery rulings is not grounds for a motion to recuse. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) (holding that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"). As held by the Fourth Circuit, "while recusal motions serve as an important safeguard against truly egregious conduct, they cannot become a form of brushback pitch for litigants to hurl at judges who do not rule in their favor." *Belue v. Leventhal*, 640 F.3d 567, 574 (4th Cir. 2011). Thus, the Court denies Plaintiffs' motion to recuse for the additional reason that the motion is meritless. Because Plaintiffs' motion for an emergency stay was based entirely on Plaintiffs' motion to recuse, the Court denies Plaintiffs' motion for an emergency stay as well.

## II. Motions for Summary Judgment

### a. Summary Judgment Standard

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). "When determining whether the movant has met its burden, the court must assess the documentary materials submitted by the parties in the light most favorable to the nonmoving party." *Id.* The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

8

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the nonmoving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Finally, because Plaintiffs are proceeding *pro se*, the Court must liberally construe Plaintiffs' pleadings. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that a *pro se* Complaint must be held to less stringent standards than formal pleadings). However, the Court cannot construct Plaintiffs' legal arguments for them. *Small v. Endicot*, 998 F.2d 411, 417-18 (7th Cir. 1993).

### b. Application of Summary Judgment Standard

The first argument advanced by Defendants in their motion for summary judgment is that Plaintiffs' claims are barred by the preclusion doctrines of res judicata and collateral estoppel based on Judge Young's decision in the Charleston County Court of Common Pleas action. Under 28 U.S.C. § 1738, federal courts must give full faith and credit to state court judgments.

"This includes the application of state preclusion rules to determine whether a prior state court judgment has res judicata effect in a § 1983 action." *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 327 (4th Cir. 2005). Under South Carolina law, to establish res judicata a party must establish three elements: (1) identify of the parties, (2) identity of the subject matter, and (3) adjudication of the issue in the former action. *Plum Creek Development Co., Inc. v. City of Conway*, 512 S.E.2d 106, 109 (S.C. 1999). Under the doctrine of res judicata, a litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit. *Id.* While res judicata bars relitigation of the same cause of action, "collateral estoppel bars relitigation of the same facts or issues necessarily determined in the former proceeding." *Pye v. Aycock*, 480 S.E.2d 455, 460 (S.C. Ct. App. 1997). "Under the doctrine of collateral estoppel, also known as issue preclusion, when an issue has been actually litigated and determined by a valid and final judgment, the determination is conclusive in a subsequent action whether on the same or a different claim." *Zurcher v. Bilton*, 666 S.E.2d 224, 226 (S.C. 2008). "The doctrine may not be invoked unless the precluded party has had a full and fair opportunity to litigate the issue in the first action." *Id.*

Here, Plaintiffs' remaining causes of action were not actually adjudicated in the state court proceeding, nor could they have been adjudicated had Plaintiffs raised them. As explained above, when a party appeals a zoning board decision to the state court pursuant to South Carolina Code Section 6-29-820, the state court will only overturn the zoning board decision "if it is arbitrary, capricious, has no reasonable relation to a lawful purpose, or if the board has abused its discretion." *Restaurant Row Assocs. v. Horry County*, 516 S.E.2d 442, 446 (S.C. 1999). Thus, Judge Young did not have occasion to consider whether Defendants' actions violated Plaintiffs'

substantive due process rights or violated the equal protection clause of the Constitution.[7] Accordingly, Defendants are not entitled to summary judgment based on doctrines of preclusion. But, as explained below, Plaintiffs have failed to establish a genuine issue of material fact as to all of the elements of their constitutional claims, and Defendants are therefore entitled to summary judgment on this basis.

### i. Substantive Due Process Claim (Count I)

Under Plaintiffs' substantive due process claim, Plaintiffs allege that Defendants have enforced a restrictive covenant selectively and that Defendants' actions constitute irrational or arbitrary government action to effect a policy for no valid purpose. (Dkt. No. 37 at 10-11). To establish a substantive due process claim, Plaintiffs must demonstrate: (1) that they had property or a property interest; (2) that Defendants deprived Plaintiffs of this property or property interest; and (3) that Defendants' action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency. *Tri-County Paving, Inc. v. Ashe County*, 281 F.3d 430, 440 (4th Cir. 2002). "Substantive due process protections 'run only to state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies.'" *Id.* (quoting *Rucker v. Harford County*, 946 F.2d 278, 281 (4th Cir. 1991)); *see also Front Royal and Warren County Indus. Park Corp. v. Town of Front Royal, Va.*, 135 F.3d 275, 288 (4th Cir. 1998) (holding that "governmental

---

[7] Plaintiffs' initial filing in this action, which included both a Complaint and a Notice of Removal, indicated that Plaintiffs wanted to "remove" the state court proceeding to federal court. (*See* Dkt. No. 1-2). Further, Plaintiffs' initial Complaint complained about the procedures used in the state court proceeding. While Plaintiffs are barred from relitigating the same issues that were litigated in state court and, as held in the Court's prior Order (Dkt. No. 54), are barred from challenging the procedures used in state court, Plaintiffs' Amended Complaint alleges constitutional causes of action which were not litigated, and could not have been litigated, in the state court proceeding.

11

action offends substantive due process only where the resulting deprivation of life, liberty, or property is so unjust that no amount of fair procedure can rectify it").

Here, even assuming Plaintiffs had a property interest and Defendants deprived Plaintiffs of that property interest, Plaintiffs substantive due process claim fails as a matter of law under the third element of the test set forth above. Plaintiffs have not created a genuine issue of material fact as to whether Defendants' actions were so arbitrary and irrational that they are "literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." Plaintiffs were given the opportunity to argue that a variance should be granted at the Zoning Board of Appeals meeting on May 5, 2008. However, Plaintiffs were not successful in obtaining a variance. Dissatisfied with the decision of and the processes used by the Zoning Board of Appeals, Plaintiffs appealed the decision to the South Carolina circuit court. However, the circuit court affirmed the decision of the Zoning Board of Appeals to deny Plaintiffs' request for a variance. To the extent Plaintiffs were dissatisfied with the decision of or the procedures used by the South Carolina circuit court, Plaintiffs could have appealed to the South Carolina Court of Appeals. However, Plaintiffs chose not to do so. Further, Plaintiffs were free to bring an additional action in state court to litigate any issue beyond the subject matter jurisdiction of the zoning board of appeals. The statute regarding appeals of zoning board decisions specifically states: "Nothing in this subsection prohibits a property owner from subsequently electing to assert a pre-existing right to trial by jury of any issue beyond the subject matter jurisdiction of the board of appeals, such as, but not limited to, a determination of the amount of damages due for an unconstitutional taking." S.C. Code Ann. § 6-29-840(B). With these processes in place, the Court finds that Defendants

have not created a genuine issue of material fact with regard to the third element of a substantive due process claim.

While the third element of a substantive due process claim presents a high bar for plaintiffs, this high bar is consistent with the federal court's limited jurisdiction. Aside from certain extreme cases, state court is the proper venue for parties to litigate local land use and zoning disputes. The Fourth Circuit has repeatedly emphasized that local land use disputes should almost always be litigated in state court. *See, e.g., Tri-County Paving, Inc.*, 281 F.3d at 440-41; *Front Royal and Warren County Indus. Park Corp.*, 135 F.3d at 288; *Love v. Pepersack*, 47 F.3d 120, 123 (4th Cir. 1995); *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 827-29 (4th Cir. 1995); *Gardner v. City of Baltimore Mayor and City Council*, 969 F.2d 63, 66-72 (4th Cir. 1992). In *Tri-County Paving, Inc.*, the plaintiff alleged that its substantive due process rights were violated where the local government denied plaintiff a building permit and enacted an ordinance which imposed a moratorium on the type of construction which plaintiff sought to perform. *Tri-County Paving, Inc.*, 281 F.3d at 433-34. In granting summary judgment to defendants on plaintiff's substantive due process claim, the Fourth Circuit noted that the district court appeared to be correct in finding that the defendants' actions did not violate state law, but the Fourth Circuit held that defendants were entitled to summary judgment regardless of whether defendants violated state law:

> [W]hether the County violated state law in regulating land use is not determinative of whether [Plaintiff]'s substantive due process rights were violated. If state law is transgressed, state courts are open to redress that violation and remedy an unlawful deprivation of property. We have repeatedly stated that "governmental actions that are violative of state law are properly challenged in state courts which exist, in part, to protect citizens from abuses of state law." *Front Royal*, 135 F.3d at 288. *See also Sylvia*, 48 F.3d at 829; *Love v. Pepersack*, 47 F.3d 120, 123 (4th Cir.1995). And the fact that state courts are available to redress and correct violations of state law "belies the existence of a substantive due process claim." *Sylvia*, 48 F.3d at 829.

13

*Id.* at 441. In *Love v. Pepersack*, the defendants' actions *did* violate state law, but the Fourth Circuit held that the violation of state law was insufficient to establish a substantive due process claim:

> State courts exist in order to, among other things, protect citizens against misapplications of state law. We would trivialize the Due Process Clause to invoke it every time the citizen defeats the state in state court. The Clause is violated only where the state courts can do nothing to rectify the injury that the state has already arbitrarily inflicted.

*Love v. Pepersack*, 47 F.3d 120, 123 (4th Cir. 1995). As explained in *Gardner*:

> [L]and-use decisions are a core function of local government. Few other municipal functions have such an important and direct impact on the daily lives of those who live or work in a community. The formulation and application of land-use policies, therefore, frequently involve heated political battles, which typically pit local residents opposed to development against developers and local merchants supporting it. Further, community input is inescapably an integral element of this system. Subdivision control is an inherently discretionary system that allows-indeed, sanctions-compromise and negotiation between developers and the planners who represent the community.
>
> Resolving the routine land-use disputes that inevitably and constantly arise among developers, local residents, and municipal officials is simply not the business of the federal courts. . . . Accordingly, federal courts should be extremely reluctant to upset the delicate political balance at play in local land-use disputes.

*Gardner*, 969 F.2d at 67-68 (internal citations omitted).

The Court has reviewed all of the materials submitted by Plaintiffs in opposition to Defendants' motion for summary judgment and in support of Plaintiffs' motion for summary judgment. None of these materials indicate that "Defendants' action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." Because Plaintiffs have failed to create a genuine issue of material fact as to the third element of a substantive due process claim, the Court grants Defendants' motion for summary judgment as to Plaintiffs' substantive due process claim.

### ii. Equal Protection Clause (Count III)

Next, under their equal protection clause claim, Plaintiffs allege that Defendants' policy "of failing to provide permits, as in the case with Plaintiffs, is not imposed in a general uniform manner to others in similar circumstances as here, but [in a] selective and discriminatory manner, whereas favorable treatment is granted a select few at the whim and favor of the Defendant Zoning Director and/or being directed for extraneous purposes by other city officials." (Dkt. No. 37 at 14). Plaintiffs further allege that they "were treated differently than other similarly situated individuals and the zoning ordinances of North Charleston were selectively enforced in this instance." (*Id.* at 15). While Plaintiffs argued in state court that Defendants discriminated against Plaintiffs based on their race, Plaintiffs have expressly stated that they are not asserting racial discrimination in this case. (*See* Dkt. No. 173 at 6 (arguing that the Magistrate's Report and Recommendation is predicated "on unsupported allegations of racial discrimination interjected by the defendants when there is no such assertion(s) made by the Plaintiffs in the record"); Dkt. No. 171 at 7 (stating that "defendant's summary judgment request is predicted [sic] upon racial discrimination outside of and contrary to the causes of action in this case, and the magistrates analysis in error rest[s] upon a racial discrimination claim that is non-existent")).[8]

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. As explained by the Fourth Circuit:

> The Equal Protection Clause limits *all* state action, prohibiting any state from denying a person equal protection through the enactment, administration, or enforcement of its laws and regulations. Even though a state law is facially

---

[8] The Court notes that Plaintiffs are African-American, and all of the zoning officials who initially addressed Plaintiffs' disputed violation of the setback requirement are also African-American, including Defendants William Gore, Mary Cohen, and Darbis Briggman. (*See* Dkt. No. 161-3 at 6). Further, Plaintiffs have not presented any evidence of racial discrimination.

15

neutral, its administration or enforcement can effect an unequal application by favoring one class of persons and disfavoring another. If the classification utilized is explicitly stated on the face of a statute or in the reasons given for its administration or enforcement, then the equal protection analysis requires us to determine whether an appropriate relationship exists between the legislative purpose and the classification adopted to achieve that purpose. On the other hand, if a classification is not explicitly stated, the plaintiff bears the initial burden of proving that a classification was nonetheless intentionally utilized. *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944). And only if the use of a classification is thus established does the equal protection analysis proceed with the inquiry into whether the classification furthers a legitimate legislative purpose.

*Sylvia Development Corp.*, 48 F.3d at 818-19.

Here, Plaintiffs do not allege that any zoning ordinance or setback requirement is facially discriminatory, nor do Plaintiffs allege that any zoning ordinance or setback requirement has been applied in a way which favors one class of persons and disfavors another. Rather, Plaintiffs simply allege that the setback requirement and applicable zoning ordinances were applied unfairly in Plaintiffs' case.[9] Even if the Court assumes without deciding that the Defendants were incorrect in finding that Plaintiffs' steps violate the setback requirement *and* assumes without deciding that Defendants have granted variances to others similarly situated to Plaintiffs, "a violation of the Equal Protection Clause still requires a showing of clear and intentional discrimination." *Id.* at 825.

The cases of *Sylvia Development Corp.* and *Sunrise Corp.* are instructive. In *Sylvia Development Corp.*, a developer alleged a violation of the equal protection clause based on the defendants' denial of a special zoning designation, which the developer alleged was based on the fact that he was a "foreigner." *Id.* at 818. The district court granted defendants' motion for

---

[9] The Supreme Court has recognized that it may be possible, in certain cases, to establish an equal protection claim on behalf of a "class of one." *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). However, as discussed herein, Plaintiffs have not created a genuine issue of material fact as to whether this is such a case.

16

summary judgment on plaintiffs' equal protection claim, and plaintiffs appealed. In affirming the district court, the Fourth Circuit found no evidence that defendants took plaintiffs' nationality into account in making their decision. *Id.* at 821-24. Plaintiffs contended that they had established an equal protection cause of action notwithstanding the lack of evidence that the defendants discriminated based on nationality because the state court had ruled that the defendants' denial of plaintiffs' application for the special zoning designation was arbitrary as a matter of law.[10] In response, the Fourth Circuit held:

> We reject appellants' theory as a matter of law. While an equal protection claim must be rooted in an allegation of unequal treatment for similarly situated individuals, a showing of such disparate treatment, even if the product of erroneous or illegal state action, is not enough by itself to state a constitutional claim. "[W]here the official action purports to be in conformity to the statutory classification, an erroneous or mistaken performance of the statutory duty, although a violation of the statute, is not without more a denial of the equal protection of the laws." *Snowden,* 321 U.S. at 8, 64 S.Ct. at 401. If disparate treatment alone were sufficient to warrant a constitutional remedy, then every blunder by a local authority, in which the authority erroneously or mistakenly treats an individual differently than it treats another who is similarly situated, would rise to the level of a federal constitutional claim.
>
> . . . .
>
> In sum, the most appellants could prove if this case were permitted to go to trial is that two similarly situated developers were treated differently by a local zoning board, without an adequate evidentiary basis for such treatment. Appellants cannot show that the County Board's decision was based in whole or in part on a deliberate classification that he was Czech, an immigrant, or a non-resident. The district court thus was compelled to grant summary judgment for defendants on the equal protection claim.

*Id.* at 825. Similarly, in *Sunrise Corp.*, owners of a hotel alleged a violation of the equal protection clause based on the defendants' refusal to grant a permit to build a new hotel. *Sunrise Corp.*, 420 F.3d at 325-26. As in *Sylvia Development Corp.*, the district court granted defendants' motion for summary judgment on plaintiff's equal protection claim, and plaintiff

---

[10] In the case *sub judice*, the state court found that Defendants' actions were *not* arbitrary as a matter of law.

17

appealed. In affirming the district court, the Fourth Circuit held that "[t]here is no evidence in the record that [plaintiff] was subjected to purposeful, invidious discrimination." *Id.* at 329. The Fourth Circuit went on to hold:

> Similar to the plaintiffs in *Sylvia Dev. Corp.*, the plaintiffs here at most could prove that similarly situated developers were treated differently, without an adequate evidentiary basis for the differing treatment. Even if this is good grounds for an appeal under state law, it does not give rise to a claim for a violation of equal protection.

*Id.* at 329.

As in *Sylvia Development Corp.* and *Sunrise Corp.*, the most Plaintiffs in the case *sub judice* could potentially prove is that they were treated differently from other residents, without an adequate evidentiary basis for the differing treatment. Plaintiffs have submitted an affidavit stating that "the city has approved scores of front yard variances even closer than the plaintiff's," (Dkt. No. 165-1 at 4), and Plaintiffs have submitted pictures which, according to Plaintiffs, show houses which have been granted a variance to build even closer to the road than Plaintiffs sought to build. (Dkt. No. 165-4 at 87-104).[11] However, the Court has reviewed all materials submitted by Plaintiffs, and the Court finds no evidence that Defendants intentionally discriminated against Plaintiffs. While Plaintiffs have asserted in affidavits that they believe that Defendants intentionally discriminated against them, such conclusory statements in an affidavit are insufficient to create a genuine issue of material fact. *See Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (holding that conclusory statements in affidavits are insufficient to create a genuine issue of material fact on summary judgment). Thus, Defendants' motion for summary judgment is granted as to Plaintiffs' equal protection cause of action.

---

[11] The pictures submitted by Plaintiffs do not identify where the photographed houses are located, when and whether a variance was granted, measurements with regard to set-back lines, or the applicable zoning ordinances at the time the houses were built. (*See* Dkt. No. 165-4 at 87-104).

18

### iii. Injunctive Relief Pursuant to 42 U.S.C. § 1987 (Count IV)

Title 42, Section 1987 of the United States Code provides for federal arrest and prosecution of persons who violate specified civil rights statutes. Specifically, this statute provides:

> The United States attorneys, marshals, and deputy marshals, the United States magistrate judges appointed by the district and territorial courts, with power to arrest, imprison, or bail offenders, and every other officer who is especially empowered by the President, are authorized and required, at the expense of the United States, to institute prosecutions against all persons violating any of the provisions of section 1990 of this title or of sections 5506 to 5516 and 5518 to 5532 of the Revised Statutes, and to cause such persons to be arrested, and imprisoned or bailed, for trial before the court of the United States or the territorial court having cognizance of the offense.

42 U.S.C. § 1987. This statute is clearly inapplicable in this civil case. *See Culler v. South Carolina Dept. of Social Services*, No. 83-1394, 1984 WL 947, at *2 (D.S.C. Jan. 18, 1984) (finding that this statute was "clearly inapplicable" in a civil case involving alleged discrimination).[12] Thus, Defendants' motion for summary judgment as to this cause of action is granted.

### iv. Mandamus Relief Pursuant to 28 U.S.C. § 1651 (Count V)

Title 28, Section 1651 of the United States Code permits federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. "A writ of mandamus is a drastic remedy which is used by courts only in extraordinary circumstances." *See Kerr v. United States Dist. Court*, 426 U.S. 394, 402 (1976). The writ "has traditionally been used in the federal courts only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its

---

[12] The parties, and the Court, inadvertently failed to specifically address this cause of action in the motion to dismiss briefing. However, Plaintiffs were entitled to dismissal of this cause of action at the motion to dismiss stage.

authority when it is its duty to do so." *Id.* (internal citations omitted). The Court finds that no extraordinary circumstances warrant issuing a writ pursuant to 28 U.S.C. § 1651 in this case. Thus, Defendants' motion for summary judgment as to this cause of action is granted.

### III. Conclusion

As explained above, Defendants are entitled to summary judgment on each of Plaintiffs' remaining causes of action. Accordingly, Defendants' motion for summary judgment (Dkt. No. 161) is granted, and Plaintiffs' motion for summary judgment (Dkt. No. 165) is denied. Plaintiffs' motion to recuse and for an emergency stay (Dkt. No. 171) is denied as well.

**AND IT IS SO ORDERED.**

_____
Richard M. Gergel
United States District Judge

April 16, 2012
Charleston, South Carolina